UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
In Admiralty

Case No.:

CLEAR SPRING PROPERTY AND CASUALTY COMPANY,

      Plaintiff,

v.

FELICITOUS CHARM, LLC,

      Defendant.                 /

## COMPLAINT

Plaintiff, CLEAR SPRING PROPERTY AND CASUALTY COMPANY ("Clear Spring") hereby sues the Defendant, FELICITOUS CHARM, LLC ("Felicitous") for a declaratory judgment, and in support thereof states as follows:

## JURISDICTION AND VENUE

1. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

2. Plaintiff designates this as an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333, as it involves a dispute regarding a maritime contract. Clear Spring invokes the provisions of Rule 9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

3. Venue is proper within the United States District Court for the Southern District of Florida because the insurance policy that is the subject of this action designates that disputes thereunder be litigated either (1) where the insured resides; or (2) where the insured's agent resides. Because the insured's agent resides in Coral Gables, Florida, the Southern District of Florida is a contractually agreed-upon venue for this suit.

4. All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been complied with.

5. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## PARTIES

6. At all times material to this action, Clear Spring is and was a licensed and admitted insurance company in the State of New York and domiciled in Texas and Illinois.

7. At all times material to this action, Clear Spring was subject to service of process in New York, NY.

8. At all times material to this action, Felicitous is and was a limited liability company organized under the laws of the State of Nevada.

9. At all times material to this action, the contract of marine insurance at issue purported to insure a vessel located in the State of Florida.

## FACTUAL ALLEGATIONS

10. This matter involves the sinking or at least partial sinking of the M/Y "Adamo" a 2008 85-foot Peer Gynt, hull identification number DLZ6961E808, official number 1304577 (the "Vessel") on or about April 21, 2021.

11. On March 10, 2021 Felicitous submitted a marine insurance application form, which included two named operator forms (for Jason Brashears and Yusmani Garcia), to Clear Spring to obtain coverage for the Vessel (the "Application"). On March 17, Felicitous submitted an application form for a third operator, Rick Marabini. These documents—constituting the Policy Application, have been attached hereto as **Composite Exhibit A**.

12. The Application is signed by Preston Sterling Kerr, purported manager for Felicitous Charm, LLC. *Id.*

13. The Application also included a Captain Charter Supplementary Sheet and three named operator forms, all signed by Preston Sterling Kerr, purported manager for Felicitous Charm. *Id.*

14. Page four of the Application says that this "application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained therein." *Id.* at p. 4.

15. Page four further states that any "misrepresentation in this application for Insurance may render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your Insurance have been disclosed, if necessary by a supplement to the application." *Id.* at p. 4.

16. The Captain Charter Supplementary Sheet contains a warning in bold letters that says "Any misrepresentation in this captain charter supplementary sheet may render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed." *Id.* at p. 6.

17. Each of the three named operator forms contain the following warning and quote in bold and capital letters:

**WARNING: THIS IS A NAMED OPERATOR ONLY POLICY**
**Any misrepresentation in this operator form may render insurance null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed.**
*Id.* at p. 7.

18. The Application made several representations regarding the Vessel, its intended use, and its proposed operators. Those representations included:

    a. The Vessel's purchase price was $1.4 million;

    b. The Vessel's present value was $1.4 million;

    c. The Vessel would not be operated single-handedly at night;

    d. Neither the insured nor any named operated had been involved in a loss in the last 10 years (insured or not);

    e. Neither the insured nor any named operator had been convicted of a criminal offense or pleaded no contest to a criminal action;

    f. No operators had been the subject of any violations/suspensions (including auto) in the last five years; and

    g. All maintenance items indicated on a survey dated February 9, 2021 had been addressed.

19. Upon information and belief, each of those representations was false.

20. On April 9, 2021, Captain Brashears assumed command of the Vessel for an 8-day trip to the Exumas.

21. On Sunday, April 18, 2021, the Vessel was returning to Nassau from Staniel Cay, when the Vessel struck a rock. Captain Brashears stopped, did an engine room check, and continued back to Nassau with a noticeable but not severe vibration.

22. On Tuesday, April 20, 2021 the Vessel's running gear was inspected by a diver in Nassau, who advised that the props were full of rope and bent. The diver removed the ropes and straightened 2 of 5 blades on each prop.

23. The rock strike on April 18, 2021 was not reported to Clear Spring.

24. At approximately 1:00 p.m. on April 20, 2021, Captain Brashears departed Nassau for Chubb Cay, where he arrived at approximately 12:30 a.m. on April 21, 2021.

25. Captain Brashears then departed Chubb Cay at approximately 5:00 a.m. on April 21, 2021 for Miami.

26. At approximately 10:15 a.m. on April 21, 2021, Captain Brashears began to notice a "tapping-knocking" sound on the starboard hull in time with the motor, though after reducing the power the knocking subsided.

27. Captain Brashears continued on toward Bimini from Mackie Shoals, when he noticed water beginning to trickle from under the floor panels in the midship bilge. Brashears has advised that "I had bilge, fire, and engine bilge all working but they were unable to keep up with rising water."

28. Within minutes, Captain Brashears contacted several nearby boaters who arrived to assist, and contacted the Coast Guard, who dispatched an aircraft that arrived within minutes. By that point, however, the water had breached the bulkhead and the Vessel was sunk down by her stern in approximately 12 feet of water.

29. At the time of the sinking, Brashears was the only person onboard.

30. At the time of the subject incident referenced above, there was an insurance policy in effect issued by Clear Spring, policy no. CSRYP/200912, with effective dates of March 11, 2021 to March 11, 2022 (the "Policy"). The Policy provides, *inter alia*, $1.4 million in hull coverage for the Vessel. *See* Policy, **Exhibit B.** The Policy provides, in relevant part, as follows:

> **Named Operators:** Yusmani Garcia; Jason L Brashears; Eric Marabini
>
> **Additional Warranties, Terms and Conditions:**
>
> > Warranted that a minimum of two Named Operators must be on board whenever the Scheduled Vessel is navigating.

\*       \*       \*

### 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

We will pay salvage charges incurred by you in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A.

\*       \*       \*

### 9. General Conditions & Warranties

a. It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

b. This insuring agreement incorporates in full your application for insurance and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

j. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

l. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

q. Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either:

      i.      The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyor's) satisfaction prior to any loss and/or claim

      Or,

      ii.     The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

s. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

\*    \*    \*

## 10. Your Duties In The Event Of A Loss

1. Immediately take all possible steps to minimise the loss and protect the Scheduled Vessel from further loss. Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

3. Comply with any reasonable request made of you, by us with regard to the loss.

\*    \*    \*

## 11. Service of Suit, Choice of Law and Forum

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

It is further agreed that:

a. the Assured may serve process upon any senior partner in the firm of:

   Mendes & Mount, LLP
   750 7th Avenue
   New York, NY 10019

   and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b. The above named are authorised and directed to accept service of process on behalf of Underwriters in all such suits and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriter's behalf in the event such a suit shall be instituted.

*     *     *     *     *

**Exhibit B.**

31. Pursuant to the Policy's choice-of-law provision, in the absence of well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice, the substantive laws of the State of New York will apply. *Id.*

32. As a result of the subject incident, Felicitous has made a claim under the Policy.

### COUNT I – UBERRIMAE FIDEI

33. Clear Spring realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

34. For hundreds of years, policies of marine insurance have been subject to the well-entrenched doctrine of *uberrimae fidei*, the duty of utmost good faith.

35. This duty requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of insurance risk.

36. This duty extends even to material facts that are not specifically inquired into by the insurer.

37. The Policy, as one of marine insurance—and pursuant to the terms of its choice-of-law provision—is governed by the principle of *uberrimae fidei*.

38. During the application for the Policy, Felicitous misrepresented, omitted, and/or concealed a number of material facts pertaining to the Vessel, its intended use, and its purported operators. Those misrepresentations include, but are not limited to, the following:

   a. The Vessel's purchase price was $1.4 million;

   b. The Vessel's present value was $1.4 million;

   c. The Vessel would not be operated single-handedly at night;

   d. Neither the insured nor any named operated had been involved in a loss in the last 10 years (insured or not);

   e. Neither the insured nor any named operator had been convicted of a criminal offense or pleaded no contest to a criminal action;

   f. No operators had been the subject of any violations/suspensions (including auto) in the last five years; and

   g. All maintenance items indicated on a survey dated February 9, 2021 had been addressed.

39. Clear Spring would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had it known any one or any combination of the facts set forth above.

40. Therefore, Felicitous breached the duty of *uberrimae fidei*, rendering the Policy void from its inception.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated the doctrine of *uberrimae fidei*, that the Policy is void from its inception, and that

consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

## COUNT II – BREACH OF GENERAL CONDITION L

41. Great Lakes realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

42. General Condition *l.* of the Policy provides that "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision."

43. During the application for the Policy, Felicitous misrepresented, omitted, and/or concealed a number of material facts pertaining to the Vessel, its intended use, and its purported operators. Those misrepresentations include, but are not limited to, the following:

   a. The Vessel's purchase price was $1.4 million;

   b. The Vessel's present value was $1.4 million;

   c. The Vessel would not be operated single-handedly at night;

   d. Neither the insured nor any named operated had been involved in a loss in the last 10 years (insured or not);

   e. Neither the insured nor any named operator had been convicted of a criminal offense or pleaded no contest to a criminal action;

   f. No operators had been the subject of any violations/suspensions (including auto) in the last five years; and

   g. All maintenance items indicated on a survey dated February 9, 2021 had been addressed.

44. Clear Spring would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had it known any one or any combination of the facts set forth above.

45. Therefore, Felicitous breached General Condition *l.* of the Policy, rendering the Policy void from its inception.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated General Condition *l.* of the Policy, that the Policy is void from its inception, and that consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

## COUNT III – BREACH OF MULTIPLE OPERATOR WARRANTY

46. Great Lakes realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

47. The Policy warrants that "a minimum of two Named Operators must be on board whenever the Scheduled Vessel is navigating."

48. Pursuant to general condition s., any breach of warranty operates to void the Policy from its inception.

49. Under either federal maritime law or the law of New York, which governs the Policy in the absence of entrenched federal maritime law, breach of an express warranty in a marine insurance policy voids coverage irrespective of any causal relation to the loss.

50. At the time of the loss, the Vessel was navigating in the waters of the Bahamas.

51. At the time of the loss, the only Named Operator on board the Vessel was Jason Brashears.

52. In fact, at the time of the loss, the only *person* on board the Vessel was Jason Brashears.

53. Consequently, at the time of the loss, the insured was in violation of an express warranty in the Policy that two Named Operators be on board when the Vessel was navigating.

54. As a result of such a breach, the Policy provides no coverage for the loss and is void from its inception.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated the Multiple Operator Warranty of the Policy, such that there is no coverage for the subject loss and the Policy is void from its inception. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

## COUNT IV – BREACH OF THE IMPLIED ABSOLUTE WARRANTY OF SEAWORTHINESS

55. Clear Spring realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

56. Under the general maritime law of the United States, there is implied in every policy of marine insurance an absolute warranty that the vessel will be seaworthy at the inception of the risk.

57. A vessel is seaworthy if it is reasonably fit for its intended use.

58. On February 9, 2021, Felicitous received a survey from Robert Garay, which identified 52 deficiencies pertaining to the Vessel. A copy of the Survey Report is attached hereto as **Exhibit C.**

59. Findings in the Survey included the following:

   a. Nine (9) hand-held (portable) fire extinguishers were found on board, all either lacking or having expired inspection tags.

   b. Date and condition of flares (VDS) indicated they have expired.

   c. The service tag indicated that the inspection for the fixed fire extinguishing system located in the lazarette has expired.

   d. The gate-valves for the emergency bilge pumps (at the raw water intake systems of the port and starboard main engines) were found to be stiff (difficult to operate) or inoperative.

   e. The rudder packing glands were leaking and in need of maintenance, Additionally, surface corrosion was sighted at the rudder posts.

   f. An active water intrusion was sighted overheat at the Crew Corridor (at overhead escape hatch).

   g. An active water intrusion was sighted at the headliner panels located after at the Crew Salon.

60. The report concluded that "Other than the discrepancies noted in the body of the report, the [Vessel] is considered to be 'Fit For Its Intended Service and Suitable For Its Intended Use' of Coastal Recreational Cruising."

61. As of the inception of the risk, not all of the discrepancies had been rectified.

62. Therefore, at the inception of the risk, the Vessel was unseaworthy.

63. Accordingly, Felicitous breached the absolute warranty of seaworthiness implied in the Policy which renders the Policy void.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated the implied absolute warranty of seaworthiness, that the Policy is void from its inception, and that consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

## COUNT V – BREACH OF THE IMPLIED NEGATIVE WARRANTY OF SEAWORTHINESS

64. Clear Spring realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

65. Under the general maritime law of the United States, there is implied in every policy of marine insurance a warranty that the Owner, from bad faith or neglect, will not knowingly permit the vessel to break ground in an unseaworthy condition.

66. A vessel is seaworthy if it is reasonably fit for its intended use.

67. Following the alleged rock strike on April 18, the insured conducted little, if any, investigation into the Vessel's hull integrity to identify whether the Vessel remained safe to operate.

68. As a result of the rock strike, the Vessel became unseaworthy.

69. Nonetheless, without confirming whether there was any structural damage to the Vessel, Felicitous then permitted the Vessel to be operated single-handedly in its journey back to Florida.

70. As a result of the unseaworthy condition caused by the alleged rock strike, the Vessel sunk.

71. Accordingly, Felicitous breached the negative warranty of seaworthiness implied in the Policy which avoids coverage for the subject loss.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated the implied negative warranty of seaworthiness and that consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

## COUNT VI – BREACH OF THE EXPRESS WARRANTY OF SEAWORTHINESS

72. Clear Spring realleges and reincorporates paragraphs 1-32 and 55-71 as if more fully set forth at length herein.

73. The Policy contains a warranty that "the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

74. Under either federal maritime law or the law of New York, which governs the Policy in the absence of entrenched federal maritime law, breach of an express warranty in a marine insurance policy voids coverage irrespective of any causal relation to the loss.

75. For the reasons set forth above, the Vessel was not seaworthy either at the inception of the risk or at the time of the loss.

76. As such, the Policy's express warranty of seaworthiness was violated, which voids the Policy from its inception.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated the express warranty of seaworthiness, that the Policy is void from its inception, and that consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

## COUNT VII – BREACH OF THE FIRE SYSTEM WARRANTY

77. Clear Spring realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

78. The Policy warranted that "If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary."

79. Under either federal maritime law or the law of New York, which governs the Policy in the absence of entrenched federal maritime law, breach of an express warranty in a marine insurance policy voids coverage irrespective of any causal relation to the loss.

80. As noted in the February 9, 2021 Survey, nine handheld fire extinguishers were found on board, *all* of which either lacked inspection tags or bore expired ones, and the service tag on the fixed firefighting system in the lazarette had expired.

81. Despite the representations Felicitous made in its application for insurance, neither of these deficiencies had been corrected prior to the loss.

82. Pursuant to general condition s., any breach of warranty operates to void the Policy from its inception.

83. As such, Felicitous was in violation of the Policy's Fire System Warranty at the time of the loss, thereby voiding coverage from its inception.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated the Policy's Fire System Warranty, that the Policy is void from its inception, and that consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

**COUNT VIII – BREACH OF THE SURVEY COMPLIANCE WARRANTY**

84. Clear Spring realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

85. The Policy warranted, in relevant part, "if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel,

then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials[.]"

86. Under either federal maritime law or the law of New York, which governs the Policy in the absence of entrenched federal maritime law, breach of an express warranty in a marine insurance policy voids coverage irrespective of any causal relation to the loss.

87. Notwithstanding Felicitous' representation in its letter of compliance that all recommendations in the February 9, 2021 survey had been addressed, all such recommendations had *not* been addressed prior to the loss. *See* Letter of Compliance, **Composite Exhibit A**, p. 9.

88. As such, at the time of the loss, Felicitous was in breach of the Policy's Survey Compliance Warranty.

89. Pursuant to general condition s., any breach of warranty operates to void the Policy from its inception.

90. Felicitous' breach of the Policy's Survey Compliance Warranty thereby voids coverage from its inception.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that Felicitous violated the Policy's Survey Compliance Warranty, that the Policy is void from its inception, and that consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

## COUNT IX – LACK OF FORTUITY

91. Clear Spring realleges and reincorporates paragraphs 1-32 as if more fully set forth at length herein.

92. The insuring agreement for hull loss contained within the Policy provides, *inter alia*, that "If a sum insured is shown for Section A of the insuring agreement declaration page, **we**

**provide coverage for accidental physical loss of or damage to the Scheduled Vessel** which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions." [emphasis supplied].

93. The loss and/or damage to the Vessel does not constitute "accidental physical loss or damage" for which coverage is afforded under the express terms of the Policy.

94. After the alleged rock strike, the insured took little, if any, action to determine whether or not there was any damage to the Vessel's running gear or if the hull integrity had been compromised.

95. After having failed to make a diligent inquiry regarding the safety and seaworthiness of the Vessel, the insured sent the Vessel back into the Gulf Stream with only a single operator.

96. This loss was therefore not fortuitous; it was the result of—at best—a callous indifference to whether the Vessel was safe to operate.

97. As such, there is no insurance coverage for the instant claim because the loss was not fortuitous.

WHEREFORE, Clear Spring respectfully requests judgment in its favor that the subject loss was not fortuitous and that that consequentially, there is no coverage for the subject loss. Clear Spring further requests any further relief that the Court deems just and appropriate under the circumstances.

Dated: May 10, 2021.

                                          Respectfully submitted,

                                          **DAVANT LAW, P.A.**
                                          *Attorneys for Clear Spring*
                                          12 Southeast 7th Street, Suite 605
                                          Fort Lauderdale, FL 33301
                                          Telephone: (954) 414-0400

By:  *Charles S. Davant*
        Charles S. Davant
        Florida Bar No. 15178
        csd@davantlaw.com
        Aaron M. Dmiszewicki
        Florida Bar No. 111455
        amd@davantlaw.com